IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RECEIVED BY MAIL
MAR 0 5 2021
CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

21-cv-650 SRN/TNL

JOSEPH ANTHONY FAVORS,       ) COURT FILE NO: _____
                             ) JUDGE: _____
Vs.                          ) MAGISTRATE JUDGE: _____
                             )
CHASE BANK USA, N.A.,        ) COMPLAINT FOR VIOLATIONS OF THE FDCPA
ALLTRAN FINANCIAL LP,        ) AND ENFORCEMENT OF AN INVALID CARD
ARS NATIONAL SERVICES,       ) MEMBER AGREEMENTS / DEMAND FOR JURY
                             ) TRIAL ON TRIABLE ISSUES
       DEFENDANTS.           )

## COMPLAINT INTRODUCTION

This matter comes before the United States District Court, District of Minnesota, upon the Complaint filed by Plaintiff, <u>Joseph Anthony Favors</u> (herein after "Favors" or "Plaintiff"), alleging violations of the Fair Debt Collections Practices Act ("FDCPA") against Defendants: (1) Alltran Financial, LP (located at P.O. Box 722929, Houston Texas, 77272-2929); and (2) A.R.S. National Services, located at P.O. Box 469046, Escondido, CA., 92046-9046, --- for violation of the FDCPA "flat-rater" prohibitions seeking *Actual Damages, Statutory Damages*, and as otherwise by Favors.

Favors also is suing Defendant Chase Bank USA, NA for wrongful enforcement of an invalid "Chase Cardmember Agreement" of several terms, conditions, and rates against Favors that must be all voided pursuant to the Minnesota Court of Appeals in *Discover Bank v. Lindwell,* A13-1344, April 7, 2017, regarding the exact identical circumstances. The only difference if the Plaintiff's names.

is alleging violations of the Fair Debt Collections Practices Act ("FDCPA") against Defendants: (1) Chase Bank U.S.A., N.A. (located at Main Office, Chase Commercial Banking, 650 3rd Avenue South, Suite 1450, Minneapolis, Minnesota, 55402-1923); In support of his Complaint, Favors alleges as follows.

## ***STATEMENT OF JURISDICTION***

Jurisdiction is based upon the following Statutes:

**1)** Section 42 USC §1985 (conspiracy to deprive of rights);
**2)** Section §1981 (equal rights under the law);

SCANNED
MAR 0 5 2021 CK
U.S. DISTRICT COURT ST. PAUL

    **3)** Section §1986 (failure to prevent deprivation of rights);
    **4)** Section §1988 (applicability of statutory and common law rights);
    **5)** Section 28 U.S.C. § 1331;
    **6)** Section 28 U.S.C. §1343;
    **7)** And on the pendent jurisdiction of this Court to entertain claims arising under State law pursuant to 28 U.S.C. § 1367.

## ***STATEMENT OF VENUE***

This Court is the proper venue for this proceeding under 28 U.S.C. § 1391, as the material events and occurrences giving rise to Plaintiff's cause of action occurred within the State of Minnesota.

## ***STATEMENT OF STANDING***

For a plaintiff to have standing, he *"must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."* See, <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016).

In *Spokeo*, 136 S. Ct. at 1548, the Supreme Court of the United States reiterated that *"[a] 'concrete' injury must be 'de fact''; that is, it must actually exist."*

It also stated that *"'[c]oncrete' is not . . . necessarily synonymous with 'tangible.'"* *Id.* at 1549. Instead, *"the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." Id.*

*"Among those circumstances are cases where a statutory violation creates the 'risk of real harm.'"* See, <u>Bowse v. Portfolio Recovery Assocs., LLC</u>, 218 F. Supp. 3d 745, 749 (N.D. Ill. 2016) (quoting *Spokeo*, 136 Supreme Court of the United States at 1549).

Favors alleges that Defendants' violations raised herein this Complaint exposed Plaintiff to a real risk of financial harm caused by an inaccurate credit rating; actual harm from enforcement of an illegal "Agreement" filled with terms and demands; actual emotional and psychological harms from the entire ordeal for which Favors seeks punitive damages. *See Spokeo*, 136 S. Ct. at 1549; *see also Bowse*, 218 F. Supp.3d at 749 *("Unlike an incorrect zip code, the 'bare procedural violation' in Spokeo, an inaccurate credit rating creates a substantial risk of harm.").* Consequently, Plaintiff's injury is concrete (credit report, credit score, damaged credit worthiness, and actual loss of a $1,500 credit card from another creditor) and therefore he has satisfied all elements of Standing pursuant to the Supreme Court of the United States. *See Spokeo*, 136 S. Ct. at 1547.

## FACTS

At some to be specified point, Plaintiff opened an account with Defendant, Chase Bank USA, NA, and at some later to be specified point, Favors allegedly became delinquent on said account. (See, exhibit #1).

At some further to be specified time, Favors asserts that Defendant Chase Bank engaged Alltran Financial LP and then ARS National Services to collect the debt owed by Favors.

Favors alleges that on March 8, 2018, Alltran Financial LP sent Favors a "Settlement Offer" in a letter to settle the entire alleged "$4,790.66" debt owed for a discount amount of "3 equal payments of $239.53." (See, exhibit #2).

On March 25, 2018, Plaintiff sent Defendant Chase Bank USA, NA a "Request for Validation of Debt" on both accounts/in separate letters. (See, exhibit #3-4).

Favors' March 25, 2018, "Request for Validation of Debt" letters are quoted below:

To Whom It May Concern: This letter is regarding account ending # 2365, which you claim I owe "$4,790.66." This is a formal notice that your claim is disputed. I am requesting validation, made pursuant to the Fair Debt Collection Practices Act and the Fair Credit Reporting Act, along with the corresponding local state laws. Please note that I am requesting "validation"; that is <u>competent</u> evidence <u>bearing my signature</u>, showing that I have (or ever had) some contractual obligation to pay you. Please also be aware that any negative mark found on my credit reports (including Experian, Transunion and Equifax) from your company or any company that you represent, for a debt that I don't owe, is a violation of the FCRA & FDCPA; therefore if you cannot validate the debt, you must request that all credit reporting agencies delete the entry. Failure to respond within 30 days of receipt of this certified letter may result in small claims legal action against your company at my local venue. I would be seeking a minimum of $1,000 in damages per violation for: (1) Defamation; (2) Violation of the Fair Debt Collection Practices Act (including but not limited to Section 807-8); (3) Violation of the Fair Credit Reporting Act (including but not limited to Section 623-b), and more.

On March 27, 2018, Favors mailed to Defendant Alltran Financial LP the first payment of the "Settlement Offer" which he alleges indicated his "accepting the 'Settlement Offer,'" and thereby taking the position that he was reducing his debt owed "to a balance of only $479.06." (See, exhibit #5).

Thereafter, at dates yet to be specified by Favors, on at least five separate monthly occasions to at least three consumer reporting agencies (namely, including Experian, Transunion and Equifax), Defendant Chase Bank USA, NA (herein after "Defendants" or "Chase") reported that Favors was behind in payments and owed Chase $4,790.66 (not $479.06) regarding Slate Card-2365. (See, exhibits #6).

On April 19, 2018, Favors received a response from Defendant Chase. (See, exhibit #7). In its response letter, Chase informed Favors that it had sent the requested documents, and it provided Favors with Defendant's contact information.

On April 22, 2018, Favors sent Defendant Alltran Financial LP, a "Second Request for Validation of Debt" letter. . . regarding the Billing Statement from Defendant stating Favors owed "$4,790.66" on Slate Card ending-2365; and Freedom Card ending-2802. (See, exhibit #8-9).

In this set of two separate letters (one for each account), Favors informed Defendant that he found their previous response inadequate, that he was giving Defendant Alltran Financial PL, "a final goodwill attempt" to have Defendant Chase clear up this matter, that he still *disputed* the debt , and that if Defendant failed to adequately reply, Favors would initiate litigation.

On July 18, 2018, Favors received a copy of two Cardmember Agreements. One was entitled, quote: "Chase Slate Card Member Agreement" (See, exhibit #10); and the other one was entitled, quote: "Chase Freedom Card Member Agreement" (See, exhibit #11) from Chase regarding the account(s) Favors allegedly already had open with Chase.

Favors was entirely previously unaware such a forgoing named document existed, and he has never signed such a document, nor does either document bear Favors' signature, or any proof of when it had been previously provided to Favors, nor ever shown to Favors thereon either document. (See, exhibits 10 and 11).

### ***FACTUAL ALLEGATIONS***

For many years Alltran Financial LP, and ARS National Services, debt-collection services, have had an arrangement with Chase Bank USA, NA that works as follows. (The arrangement has never been reduced to writing, but there is no material dispute over how it works.)

When unsuccessful in obtaining payment from one of its customers, Chase Bank USA, NA sends the name and address of the customer to Alltran Financial LP, and/or ARS National Services, which writes the customer demanding payment of the sum that Chase Bank USA, NA has informed Alltran Financial LP, and/or ARS

168 National Services, is due, and stating that further collection efforts may ensue if the
169 demand is ignored, using these words, quote: *"Be prepared for further collection*
170 *activity,"* as the letter to Favors from ARS National Services put it; after Favors quit
171 making the settlement payments to Alltran Financial LP on the Slate Card ending-
172 2365 and declared violations of the FDCPA against Alltran Financial LP (herein after
173 "Alltran" or "Defendants") and Chase Bank USA, NA for illegally contacting Favors'
174 employer about collecting the alleged debt without prior authorization to do so, in
175 writing or otherwise from Favors, a statutory violation of the FDCPA of $1,000
176 (which was far more than the $479.06 remaining settlement amount Favors owed
177 on the Slate Card ending-2365 Settlement Offer he had engaged with Chase/Alltran).
178 At which point, Favors discontinued the payments until he could bring the matter
179 before the Court on the statutory violations by Chase/Alltran, for redress of that
180 violation that could have caused Favors to loses his employment. Favors never
181 gave Chase or Alltran his employer's name or number; they somehow obtained it on
182 their own without Favors' knowledge of it.

183
184      Before mailing the letter, Alltran Financial LP, and/or ARS National Services
185 runs a computer check on the customer's name in order to eliminate debtors whom
186 it would be futile to dun.

187
188      For example, if the computer check reveals that the debtor is in bankruptcy,
189 Alltran Financial LP, and/or ARS National Services will not bother to send him a
190 letter, or will make a settlement offer if the debt is too small to warrant filing a
191 claim.

192
193      The contents of the dunning letter is a collaborative product of Alltran
194 Financial LP, and/or ARS National Services and Chase Bank USA, NA, and the letter
195 directs the customer to pay the latter directly.

196
197      The letter lists a phone number for Alltran Financial LP, and/or ARS National
198 Services but it is a number for messages only, and the messages are forwarded to
199 Chase Bank USA, NA, rather than being handled by Alltran Financial LP, and/or ARS
200 National Services.

201
202      If the letter fails to elicit payment, Chase Bank USA, NA, will so notify Alltran
203 Financial LP, and/or ARS National Services, which may send another letter; and, if
204 it does, this sequence may be repeated a number of times, until Alltran Financial LP,
205 and/or ARS National Services is convinced that the debtor is not going to pay in
206 response merely to a demand.

207

Chase Bank USA, NA, pays Alltran Financial LP, and/or ARS National Services a flat fee for each letter that Alltran Financial LP, and/or ARS National Services mails.

If the letters fail to elicit payment of the debt, Chase Bank USA, NA retransmits the customer's name and address to Alltran Financial LP, and/or ARS National Services and it is then up to Alltran Financial LP, and/or ARS National Services to decide what additional efforts, if any, to make to collect the debt.

Because the debts usually are small, Alltran Financial LP, and/or ARS National Services probably does nothing further in most cases, although the record is barren of data.

If it does make further efforts and succeeds in obtaining money from the debtor, it keeps 35 percent of the *"take"* as its compensation and remits the balance to Chase Bank USA, NA.

## COUNT I

On the basis of the forgoing Facts/Factual Allegation, Favors alleges the following Claims:

***CLAIM ONE***
***ONE VIOLATION OF THE FAIR DEBT COLLECTIONS PRACTICES ACT ("FDCPA"), SECTION 1692A(6) FOR KNOWING AND INTENTIONAL USE OF A "FLAT-RATER" (TWICE) WITH THE INTENT TO INTILL FEAR AND INTIMIDATION INTO PLAINTIFF, SO THAT PLAINTIFF WOULD ABANDON LEGITIMATE DEFENSES/DISPUTES IN VIOLATION OF THE FDCPA UNDER THE EXCEPTION RULE FOR A CREDITOR TO BE LIABLE UNDER THE ACT,***

***CLAIM TWO***
***ONE VIOLATION OF THE FAIR DEBT COLLECTIONS PRACTICES ACT, SECTION 1692A(6) FOR ACTING AS A "FLAT-RATER" FOR CHASE BANK, AGAINST DEFENDANT ARS NATIONAL SERVICES; AND***

***CLAIM THREE***
***ONE VIOLATIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT, SECTION 1692A(6) FOR VIOLATION OF THE PROHIBITION ON ACTING AS A "FLAT-RATER" FOR CHASE Bank, AGAINST defendant ALLTRAN FINANCIAL.***

## ARGUMENT

One of the practices that the Fair Debt Collection Practices Act, 15 U.S.C. sec. 1692 *et seq.*, forbids is "flat-rating," the term popularly applied to providing a form

which creates the false impression that someone (usually a collection agency) besides the actual creditor is "participating" in collecting the debt. sec. 1692j(a); see S. Rep. No. 382, 95th Cong., 1st Sess. 5 (1977). (The provider of the form presumably charges a "flat rate" for the form; hence the popular name for the practice.)

In this case, Favors' "flat-rater" Claim against Alltran Financial LP and ARS National Services is based on, but not limited to, the *"deception"* conveyed to Favors by Chase Bank USA, NA assisted by Alltran Financial LP and ARS National Services who were aware of the *"deception"* they took part in conveying to Favors to intimidate, harass, and instill fear into Favors as a method of debt collection by turning over the alleged debt in the forgoing *deceptive* manner for a collection. That is the gist of this Claim, nothing else previously raised in a Complaint against any Defendant. This Claim has never been ruled on by any Court (State or Federal) in the United States or abroad and therefore is not barred under *res judicia*.

Res judicata is not applicable to this case/Claim, where "flat-rater" charges against any Defendant by Favors previously, was without any court ruling on propriety of "flat-rater" charges, there is no error in repeating same charges, based upon same specific instances of alleged actions by Defendants in this second proceeding in Federal or State Court. See, <u>Foster v. Laroque</u>, 246 F. Supp. 911 (E.D. La. 1965), aff'd, 369 F.2d 399 (5th Cir. 1966).

Favors claim is based on, but not limited to, the fact that the Defendants element of *deception* lies less in the misrepresentation that a third-party debt collector is involved, than in the signal, conveyed to Favors the debtor by turning over a debt for collection, that the creditor does not intend to drop the matter. Congress's concern was that such *deception* induces debtors to abandon *legitimate defenses*.

Whether the concern was well founded is not for the Court to say. For example, Alltron Financial immediately abandoned the collection efforts, when Favors did not pay, but ARS National Services' threatened Favors to instill fear in him to abandon his legitimate statutory violation against Alltran Financial PL for illegally contacting Favors' employer about collecting the debt, and ARS National Services' immediate further collection effort in another dunning letter to Favors threatened further collection efforts will be ensued if the demand is ignored by Favors, using these words, quote: *"Be prepared for further collection activity,"* as the letter to Favors from ARS National Services put it; after Favors quit making the settlement payments to Alltran Financial LP on the Slate Card ending-2365 and declared violations of the FDCPA against Alltran Financial LP (herein after "Alltran" or "Defendants") and Chase Bank USA, NA for illegally contacting Favors' employer

about collecting the alleged debt without prior authorization to do so. The fact that ARS National Services immediately abandoned the collection effort, and never contacted Favors again, actions evidence Favors' "flat-rater" claims against Defendants based on their own *actions*.

The flat-rater is thus not the creditor, but the counterpart (namely, in this case *Alltran Financial LP and ARS National Service*).

Although, Defendant Chase Bank, as a contributory infringer in the law of intellectual property; Chase Bank furnished a *deceptive instrumentality* to the primary violator (namely, *Alltran Financial LP and ARS National Service)* by Chase Bank's participation/control over the actions/operation of the primary violators.

And, although another provision of the Act, 15 U.S.C. sec. 1692a(6), brings Chase Bank, based on those factual allegations, within the scope of liability by forbidding a creditor, in the collection of his debts, to use a name which suggests the involvement of a third party, conceivably this provision could be read to reach only the case in which the creditor (Chase) is using a pseudonym; but this is not Favors' Claim against Chase.

A separate provision forbids the use of a pseudonym by a debt collector, 15 U.S.C. sec. 1692e(14), and while a debt collector is not a creditor the Section Favors has just cited indicates that the Statute distinguishes between the use of pseudonyms, on the one hand, and a false representation that a third party (which does exist) is participating in debt collection, on the other.

On March 8, 2018, Alltran Financial and Chase Bank USA, NA sent Favors a "Settlement Offer" to settle the entire alleged debt owed of "$4,790.66" on Slate Card account ending-2365. (See, exhibit #2). A discount amount of "3 equal payments of $239.53."

Favors received the aforesaid such dunning letter / collaborative product of Alltran Financial LP and Chase Bank USA, NA / offering the settlement sum of $718.60 in 3 equal payments of $239.53.

Favors accepted the offer when he responded by paying $235.00 as the first payment of the settlement offer.

Favors was not wrong when he ceased payments to pursue liability against Alltran Financial LP, the agent of Chase Bank, for FDCPA violations that occurred when Defendants contacted Favors' employer about collecting the debt. Favors was entitled to bringing this civil action suit against Chase Bank USA, NA; Alltran

334  Financial LP; and ARS National Services, the collection agencies that stuffed and
335  mailed the envelopes from Chase Bank USA, NA to Favors.

337  Based on the forgoing Factual Allegations, Favors' contention that Alltran
338  Financial LP, and ARS National Services are a *"flat-rater"* is not frivolous.

340  Therefore, Chase Bank USA, NA must be liable under Section 1692a(6), as
341  well.

343  Alltran Financial LP and/or ARS National Services did compose, either by
344  itself or jointly with Chase Bank USA, NA the dunning letters / settlement offer that
345  Favors received.

347  And because this was all Alltran Financial LP and/or ARS National Services
348  done to help Chase Bank USA, NA collect the money, Favors allegedly owed it,
349  Alltran Financial LP, and ARS National Services are indeed liable under the FDCPA
350  for $1,000 each, Statutory damages to Favors, under the prohibition on *deceptive*
351  practices by Congress as a *"flat-rater,"* alleged by Favors in the forging Complaint.

353  Because the debt (settlement offer) that Alltran Financial LP was trying to
354  collect on behalf of Chase Bank USA, NA was small ($700), Alltran Financial LP's
355  collection efforts are (based on the facts), limited to sending dunning letters / the
356  settlement offer.

358  Favors was, based on the forgoing facts of this case, not in the clutches of a
359  bona fide collection agency which, if the letters fail to collect the debt, would sue.

361  Alltran Financial LP, has been sued before for making these harassing,
362  unauthorized collection calls, and still continued to do it again to Favors by
363  contacting Favors' employer about collecting this alleged debt. See, *Martinez v.*
364  *Alltran Financial,* United States District Court for the District of Arizona, Case, No.
365  CV-18-04815-PHX-DLR, April 6, 2020; (Summary Judgment sought by Alltran
366  Financial denied).

368  The plain language used in The Fair Debt Collection Practices Act ("FDCPA"),
369  Section 1681s-2(a)(7)(A)(i), states quote: *"If any <u>financial institution</u> that extends*
370  *credit and regularly and in the ordinary course of business furnishes information to a*
371  *consumer reporting agency described in section 603(p) [15 USCS 1681a(p)] furnishes*
372  *negative information to such an agency regarding credit extended to a customer, the*
373  *financial institution shall provide a notice of such furnishing of negative information,*
374  *in writing, to the customer."*

## COUNT II

On the basis of the forgoing Facts/Factual Allegation, Favors alleges the following Claims:

### CLAIM ONE
***ILLEGAL AND VOID "CARDMEMBER AGREEMENT," BUSINESS PRACTICES BY DEFENDANT CHASE BANK USA, NA, WHERE CLEARLY ESABLISHED APPELLATE COURTS PREVIOUSLY RULED THE EXACT SAME BUSINESS PRACTICE WAS PROHIBITED, AND VOIDED OF ENFORCEMENT AGAINST A DEBTOR BY THE CREDITOR IN THE MATTER OF <u>DISCOVER BANK V. LINDWELL, MINNESOTA COURT OF APPEALS, A13-1344 (APRIL 7, 2017)</u>.***

### ARGUMENTS

Here, Plaintiff invokes the Court pursuant to *Discover Bank v. Lindwell*, Minn. Court of Appeals A13-1344, April. 7, 2017, arguing that: (1) The *"Chase Slate Cardmember Agreement"* (See, exhibits #<u>9</u>) and (2) the "Chase Freedom Cardmember Agreement" (See, exhibits #<u>10</u>) that Favors received in the mail from Defendant Chase Bank on July 18, 2018, but previously enforced the terms and conditions therein those documents on Favors in every Monthly Billing Statement: Specifically speaking, (1) "Late fees," (2) "interest," (3) "payment due dates," (4) "minimum payment due amounts," must all be deducted, and/or ruled void / was not enforceable upon Favors by Chase Bank, pursuant to *Lindwell id,* because Chase Bank failed to provide Favors a copy of those documents until after Chase Bank already closed both accounts, and was being sued by Favors who had contacted Chase with two dispute letters, and had filed a lawsuit against Chase.

In the matter of *Discover Bank v. Lindwall,* [1] *Lindwall* argued that she could not be held liable to the terms of the *"Cardmember Agreement"* adduced by Discover Bank, *"because Discover Bank never sent her the cardmember agreement, which prevented her from agreeing to it."*

1. That is the exact same argument Favors is making in this case against Chase Bank *"because [Chase Bank] never sent [Favors] the cardmember agreements* ("Chase Slate Cardmember Agreement" and "Chase Freedom Cardmember Agreement")*, which prevented Favors from agreeing to it,"* the exact same circumstance ruled on in *Lindwall.* The only difference is that Favors is not liable under "Accounts Stated Theory" because, unlike *Lindwell,* Favors filed

---

[1] Discover Bank, Respondent, vs. Crysone C. Lindwall, Appellant., Court of Appeals of Minnesota, 2014 Minn. App. Unpub. LEXIS 304, A13-1344; April 7, 2014, Filed

several dispute letter to Chase Bank regarding the entire alleged amount due and account bearing his signature. (See, exhibit #8-9; Second Validation of Debt Letters)

Favors is requesting the Court to take Judicial Notice[2] (for two reasons:

1. The Minnesota Court of Appeals never returned Favors irreplaceable exhibits (#A and B filed in that case); the actual postdated envelopes each Chase Cardmember Agreement was received in by Favors;

2. To verify this Claim against Chase Bank was never ruled on in that case, nor did Chase Bank ever adduce evidence in the record that showed they did provide Favors the Cardmember Agreements at the time the Slate or Freedom account was opened, or at any time before both accounts had been long ago closed by Chase.

The Minnesota Court of Appeals ruled in favor of *Lindwall*, stating quote: *"The record does not contain any evidence that Discover Bank ever sent the cardmember agreement to Lindwall before closing the account in September 2011. If Discover Bank did not send the cardmember agreement to Lindwall, a reasonable fact-finder could not conclude that a contract was formed and, thus, could not find Lindwall liable under the terms of the cardmember agreement. See, SCI Minnesota Funeral Servs., 795 N.W. 2d at 864; [*7] Minneapolis Cablesystems, 299 N.W. 2d at 122; Druar, 222 Minn. At 395, 24 N.W. 2d at 826."*

Thus, the Court in *Lindwall*, and all Minnesota precedent case laws cited by *Lindwall*, ruled that the Court: *"Could not find Lindwell liable under the terms of the cardmember agreement."*

Favors makes the same (identical) argument in this case against Chase Bank.

Even if Favors could be liable to Chase Bank for the *principle amount* under the Accounts Stated Theory (which Favors argues he is not, because unlike *Linwall*, Favors did dispute the account statements twice, and Accounts Stated Theory can only be imposed if Favors had not disputed the Billing Statements.

---

[2] "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

*Lindwell,* did not dispute the Billing Statements, and was therefore ruled to be liable to Discover Bank for the principle amount --- no interest, late fees, or any other terms raised in the Cardmember Agreement.   See, *Lindwell, id.*

And since none of them terms in the Cardmember Agreements ("Chase Slate Cardmember Agreement" and "Chase Freedom Cardmember Agreement")are applicable to Favors, Favors is entitled, based on *Lindwell* and numerous precedent case laws cited therein that case, a Court Order in this case to the following relief regarding the Chase "Slate Cardmember Agreement" and the "Chase Freedom Cardmember Agreement."

(1) Both accounts immediately reinstated;

(2) With no negative reporting to the credit reporting agencies regarding any amount "delinquent" or "past due" --- Ever!  Because the due date agreement of the Cardmember Agreements is not applicable to Favors.

(3) Chase Bank must immediately have all "delinquent," "negative" reporting to any credit reporting agency on both accounts deleted (including *Experian, Transunion and Equifax*);

(4) No minimum payment due regarding either account monthly;

(5) All fees and interest ever added to the balance (and ever paid by Favors) due deducted from the balance due down to the bare principle amount on both accounts;

(6) A $4,000 Chase Slate Card® charging limit; and $7,000 Freedom Card® charging limit reported with the credit reporting agencies the same as it was at the time the accounts were open, but, minus the principle amounts due on each account;

(7) Both card accounts  charging privilege suspended, until 100%  of the principle amount due is repaid;

(8) Once the accounts are reduced to zero dollars principle amount due, the charging privileges on each account is automatically reinstated, with the same charging limits, under the terms and conditions of the "Chase Slate Cardmember Agreement," and the "Chase Freedom Cardmember Agreement" that Chase Bank failed to ever provide to Favors.

## ACTUAL DAMAGES

1) Section 1692k(a)(1) also provides for an award of Actual Damages sustained by Plaintiff as a result of a Defendants' Fair Debt Collection Procedure Act ("FDCPA") violation(s).

2) Actual damages are intended to *"compensate a plaintiff for out of pocket expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that results from defendant's failure to comply with the FDCPA."*[3]

3) The evidence submitted in support of actual damages entitles Plaintiff to a declaration in this Complaint to an award of *"$10,000 [from each Defendant] to compensate for humiliation and mental distress,"* including feelings of fear, anxiety, panic, and nervousness, as well as stomach pains, sleep loss, and headaches he attributes to Defendant's violations of his rights and collection letters.

4) However, Plaintiff seeks a judgment against Defendant Chase Bank USA, NA, and Defendant Alltron Financial LP, and Defendant ARS National Services for Actual Damages pursuant to Section 1692k(a)(2), for a reduced amount to an award of $1,500 [from each Defendant] in actual damages that will fairly compensate Plaintiff and is commensurate with the evidence presented in this case and with awards in similar cases. For example, see, Cf. *Pearce v. Ethical Asset Mgmt., Inc.*, No. 07 Civ. 718S, 2010 U.S. Dist. LEXIS 22421, 2010 WL 932597, at *5 (W.D.N.Y. Mar. 11, 2010) (awarding $750 in emotional distress damages where Defendant's disclosure of unpaid debt to plaintiff's daughter caused plaintiff humiliation and fear for daughter's welfare); *And see, Gervais v. O'Connell, Harris & Assocs., Inc.*, 297 F. Supp. 2d 435, 440 (D. Conn. 2003) *("The Court is sympathetic with plaintiff's claim and believes that he did, in fact, suffer some emotional distress as a result of defendants' heavy-handed and unlawful conduct. However ... plaintiff acknowledges that he did not need the care of a physician as a result of these events .... Accordingly, the Court awards plaintiff $1,500 for emotional and mental distress damages under FDCPA.").*

Favors contends, it is always true that if one has the cash, the products can be purchased, without credit. The wrongful denial of which is actionable and for which damages are appropriate redress for the *"denial of credit,"* not the denial of products and services.

---

[3] *Milton v. Rosicki, Rosicki & Assocs., P.C.*, No. 02 Civ. 3052, 2007 U.S. Dist. LEXIS 56872, 2007 WL 2262893, at *3 (E.D.N.Y. Aug. 3, 2007).

Page **13 of 18**

Credit has an independent worth in our economy. But, precisely because *"[credit] has ceased to be a luxury item,"* the United States Congress passed the ECOA to establish *"as clear national policy that no credit applicant shall be denied the credit he or she needs and wants **on the basis of characteristics that have nothing to do with his or her creditworthiness**,"* essentially, as alleged in this case against Chase Bank. *See,* 1976 U.S. Code Cong. & Admin. News at 405.

Favors also argues that he may recover compensation for his *"embarrassment, humiliation and mental distress"* occasioned by the alleged wrongful denial of credit.

His argument likens the ECOA to Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §3605, which proscribes discrimination on account of race, color, religion, sex or national origin in loans or other financial assistance.

Title VIII, like the ECOA, gives the aggrieved applicant a *cause of action* for *actual* and *punitive damages*, 42 U.S.C. §3612(c), and it has been interpreted to provide compensation for *"embarrassment, humiliation and mental distress." See, Smith v. Anchor Building Corp.,* 536 F.2d 231, 236 (8th Cir. 1976); *Williams v. Matthews Co.,* 499 F.2d 819, 829 (8th Cir. 1974), *cert. den.* 419 U.S. 1021, 1027, 42 L. Ed. 2d 294, 95 S. Ct. 495; *Jaunty v. McKay & Plague, Inc.,* 496 F.2d 1119, 1121 (7th Cir. 1974); *Seaton v. Sky Realty Company, Inc.,* 491 F.2d 634, 636 (7th Cir. 1974); *Steele v. Title Realty Co.,* 478 F.2d 380, 384 (10th Cir. 1973).

The analogy to Title VIII is persuasive since both acts are statutory remedies for denial of Civil Rights.

Furthermore, it would be inconsistent with the Congressional purpose of eliminating invidious discrimination to ignore the emotional harm often flowing from it by limiting the aggrieved applicant to out-of-pocket losses.

All the same, the Court is not requested by Plaintiff to presume such damages have occurred.

Neither the likelihood of such injuries nor the difficulty of proving them is so great as to justify deviation from the rule that compensation will not be provided where damage is not proven. *See, e.g., Carey v. Pips,* 435 U.S. 247, 262, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978).

Favors has raised a genuine issue as to his emotional harm by testimony that he was *"infuriated, angry, upset and felt an injustice had been done"* that needs to be rectified.

The final element of *Actual Damage* which Favors claims derives from a wrongful denial of several credit Applications (including Amizon) (See, exhibit #10; proof Amazon credit denial due to Chase Bank negative reporting) and loss of a $2,500 Discover Bank credit card all due to the negative reporting by Chase Bank to the credit reporting agencies on the Chase Slate and Chase Freedom accounts is harm to ones *"reputation for credit-worthiness."*

This kind of *injury* is, perhaps, the one most logically related to this / a denial of credit.

However, as with the alleged *emotional* injuries, the United States Court is not requested by Favors to presume damages.

Favors must prove *actual injury* to his *credit reputation* (he alleges 40 points on his credit score) before he may be compensated in damages.

Since Favors has raised in his Complaint a genuine issue with regard to the harm he suffered from the alleged wrongful denial of credit, any motion to dismiss by Aspire Banks to dismiss Favors' Claims for <u>*actual damages*</u> must be denied.

Favors establishes that he suffered *Actual Damages*:

First, Favors' credit score went down over 150 points due to the Chase Bank negative reporting on these two accounts. (See, exhibit #11; Proof credit score went down 150 points due to Chase negative reporting)

Second, Favors motivation for his first application was <u>*convenience*</u>, and <u>*increased purchasing power*</u>, and <u>*protection for emergencies*</u>, and an <u>*increased credit score*</u>, which all have some value.

The circumstances resulting in his second application for a credit card to Amazon was for the same reasons. (See, exhibit #10; proof Amazon credit denial due to Chase Bank negative reporting)

Thus, Favors has raised a *genuine issue* as to his *emotional harm* by testimony that he was **<u>*"infuriated, angry, upset and felt an injustice had been done"*</u>** that needed to be rectified.

Favors has placed these losses in issue and is entitled to attempt to prove the amount of their worth <u>*at trial*</u>.

Favors attempts to demonstrate he had *particular need or desire* for an Aspire Bank card.

## ACCOUNT STATED

1) The doctrine of "Account Stated" is a means of establishing liability for a debt as an alternative to a contract-based theory of liability.[4] An account stated is created *if* a debtor retains a detailed billing statement without objection.[5]

2) The debtor's retention of the statement without objection constitutes a manifestation of assent and implies a promise to pay the balance that is said to be owed.[6]

3) Here, Defendant Chase Bank, USA, NA is not entitled to any Account-Stated Theory, because even if Plaintiff used the credit-card account, he did file several written dispute letters to Defendant Chase Bank USA, NA, stating that the entire (100%) alleged amounts due on the Billing Statements, and proof of Favors' signature on purchases. Billing Statement(s) he received were incorrect.

4) In the matter of *Discover Bank v. Lindwell*, Minn. Court of Appeals A13-1344, April. 7, 2017,, no dispute letters were ever filed by *Lindwall*, which is not the case here. So, *Discover Bank v. Lindwell*, is not applicable regarding any Account-Stated ruling against Favors.

5) Defendant Chase Bank USA, NA failed to ever respond to Plaintiff with a "written explanation" explaining why they believe their Billing Statement amount due was correct, as required by the FDCPA to Favors disputes.

6) Favors' Discover Bank credit card was cancelled due to the "delinquent" reporting on the Slate and Freedom accounts by Chase Bank, actual damages in the amount of a $1,500 credit card.

7) *Actual Damage* which Favors claims derives from a wrongful denial of several credit Applications (including Amizon) (See, exhibit #10; proof Amazon credit denial due to Chase Bank negative reporting), And,

---

[4] See, *American Druggists Ins. v. Thompson Lumber Co.*, 349 N.W.2d 569, 573 (Minn. App. 1984).

[5] *See. Meagher v. Kavli*, 251 Minn. 477, 487, 88 N.W.2d 871, 879 (1958).

[6] *Id.; see also Erickson v. General United Life Ins. Co.*, 256 N.W.2d 255, 259 (Minn. 1977); *Butler Mfg. Co. v. Miranowski*, 390 N.W.2d 380, 384-85 (Minn. App. 1986).

8) Loss of a $2,500 Discover Bank credit card all due to the negative reporting by Chase Bank to the credit reporting agencies on the Chase Slate and Chase Freedom accounts is all harm to ones *"reputation for credit-worthiness."*

## ***STATUTORY DAMAGES***

The Fair Debt Collection Procedure Act ("FDCPA") provides for a maximum of $1,000 in statutory damages. 15 U.S.C. 1692k(a)(2)(A). ***"All that is required for an award of statutory damages is proof that the statute was violated***, *although a court must then exercise its discretion to determine how much to award, up to the $1,000 ceiling."*[7]

In calculating an appropriate statutory damages award, the district court considers *"the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."* See, 15 U.S.C. 1692k(b)(1).

## ***RELIEF REQUESTED***

Here, Plaintiff is seeking Statutory Damages pursuant to Section 1692k(a)(2). Under this provision, **the $1,000 limit applies to each incident** without regard to the number of violations that occurred during a given incident. There is no controlling authority on point and district courts have reached opposite conclusions.

Since the Court can adjust the size of each individual award to avoid injustice and limitation by incident might permit wrongful behavior to go unpunished when one single incident included a number of particularly egregious violations, Plaintiff concludes that the limit applies to each violation. The number of incidents, however is relevant to the amount of damages to be levied.

1) In this case there are at least two (2) separate law infractions against Defendants Alltron Financial LP, and ARS National Services by Favors for violation of the prohibitions on "flat-rater" business practices for Chase Bank.

2) Plaintiff is entitled to and requests an award of $1,000 for each of the infractions (a total of at least $4,000) is appropriate, from both Defendants Alltron Financial LP, and ARS National Services.

3) Plaintiff is seeking an award of *"$10,000 [from each Defendant] to compensate for humiliation and mental distress,"* including feelings of fear, anxiety, panic,

---

[7] *Savino v. Computer Credit Inc.*, 164 F.3d 81, 86 (2d Cir. 1998).

and nervousness, as well as stomach pains, sleep loss, and headaches he attributes to Defendant's violations of his rights and collection letters.

## SETTLEMENT OFFER

Plaintiff is willing to settle this matter out of Court with Defendant Chase Bank USA, NA, Alltron Financial LP, and ARS National Service under the following terms if immediately accepted:

1) Defendant Chase Bank will immediately have both accounts (Chase Slate and Chase Freedom) completely deleted from existing with all credit reporting agencies.

**FEBRUARY 10, 2010**
Date

*Joseph A. Favors*
Plaintiff, Joseph A. Favors, pro se
Green Acre East/CPS
100 Freeman Drive
St. Peter, Minnesota (56082)
705-484-9930 Ext: 79327
(Message Only)